IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

THE CITY OF BATON ROUGE/          CIVIL ACTION NO:_____
PARISH OF EAST BATON ROUGE
*PLAINTIFF*

**VERSUS**

EMERGENCY MEDICAL SERVICES
MANAGEMENT AND CONSULTANTS, INC.
       *DEFENDANTS*        **JURY TRIAL DEMANDED**

## COMPLAINT WITH JURY DEMAND

**NOW INTO COURT,** through undersigned counsel, comes plaintiff, the City of Baton Rouge/Parish of East Baton Rouge ("City/Parish"), through its attorney Creighton B. Abadie, assistant Parish Attorney, for the City of Baton Rouge/Parish of East Baton Rouge complaining of the actions of Emergency Medical Services Management and Consultants, Inc., who respectfully allege as follows:

## INTRODUCTION

1.

On September 9, 2022, the City/Parish's Department of Emergency Medical Services ("EMS") issued a Request for Proposals ("RFP") for the EMS Third Party Billing contract. On April 4, 2023, Defendant entered into a contract ("the Contract") with City/Parish to provide third party medical billing services to EMS. Specifically, Defendant was to provide a medical billing, coding and collection system as well as assistance with credentialing services, such as completing and submitting revalidation forms for Medicare. The term of the Contract was June 1, 2023, to May 31, 2026, with the option of two, one-year renewals if both parties agreed. The Defendant breached the contract.

## JURISDICTION AND VENUE

2.

The United States District Courts have original jurisdiction over all civil actions where the matter in controversary exceeds $75,000 and the dispute is between citizens of different states. In this case, the amount in controversy exceeds $75,000 and the City of Baton Rouge/Parish of East Baton Rouge is a citizen of Louisiana and Emergency Medical Services Management and Consultants, Inc. is a citizen of North Carolina.

3.

Venue is proper in the Middle District of Louisiana pursuant to 28 U.S.C. 1391(b)(1) because one or more of the defendants resides in this District.

## PARTIES

The City of Baton Rouge/Parish of East Baton Rouge is a municipal entity domiciled in in East Baton Rouge Parish, Louisiana.

4.

Made defendant herein is Emergency Medical Services Management and Consultants ("Defendant"), a corporate entity registered in the State of North Carolina, with its domiciliary address and principal place of business in Forsyth County, North Carolina.

## FACTUAL BACKGROUND

5.

On September 9, 2022, the City/Parish's Department of Emergency Medical Services ("EMS") issued a Request for Proposals ("RFP") for the EMS Third Party Billing contract.[1]

---

[1] See *Request for Proposal*, attached hereto as Exhibit "A".

6.

The RFP specifically set forth EMS' requirements to fulfill the obligations of third-party billing contractor.

7.

On April 4, 2023, Defendant entered into a contract ("the Contract") with City/Parish to provide third party medical billing services to EMS. Specifically, Defendant was to provide a medical billing, coding and collection system as well as assistance with credentialing services, such as completing and submitting revalidation forms for Medicare.[2] The term of the Contract was June 1, 2023, to May 31, 2026, with the option of two, one-year renewals if both parties agreed.[3]

8.

Defendant worked as EMS' third-party billing contractor from June 1, 2023, to April 18, 2024. During that time, Defendant submitted monthly invoices to City/Parish for services rendered.

9.

During the term of the contract, there were many reported contractual performance issues that arose regarding Defendant's services, which include but are not limited to the following:

a. Paid patient accounts (July 2016 to current) from the prior billing company had not been transferred.
b. Billing incorrect levels of service due to not verifying updated Electronic Patient Care Reports ("ePCRs") in a timely manner.
c. Did not establish any processes or systems with area hospitals to obtain billing and insurance information for patients transported to their facility by EMS. Therefore, causing claims not to be billed to insurance companies and a loss of revenue for EMS.
d. Posting payments before confirming funds were deposited into EMS bank account, causing patient accounts to be paid when, in fact, they were not.
e. Not issuing medical records requests in the timeframe required under La. R.S. 40:1165.1.
f. Not charging the correct amounts for medical records requests according to La. R.S. 40:1165.1.

---

[2] See *Contract*, attached hereto as Exhibit "B", at p. 6.
[3] *Id.*, at p. 1, Article I.

g. Not remitting fifty percent of medical records request charges to EMS.
h. Not providing EMS full access to their patient records that Defendant is responsible for handling.
i. Billing incorrect levels of service due to not verifying updated EPCRs is in a timely manner.
j. Lack of knowledge and judgment regarding EMS transport billing in ET3 billing as to the appropriate and applicable, federal and state laws, causing the submission of inaccurate claims.
k. Not gathering missing data for patient billing by exhausting all research options.
l. Failing to review all claims before submission, causing unreasonable amounts of coding errors, levels of service billing areas, ICD coding errors, modifier errors, and sending invoices to our residence.
m. Unable to give quarterly feedback due to lack of expertise of employees handling the EBR – EMS account.
n. Not submitting claims within 10 business days of the ePCR import date.
o. Did not establish a deductible management plan until August 2023. When asked about a deductible management plan, the client executive was unfamiliar with a deductible management plan.
p. Not giving full access to patient accounts to allow for compliance audits, including pre-billed claims, submitted claims and denied claims.
q. No performance of quarterly internal audit by a person who doesn't regularly work on the EBREMS account.
r. Not providing timely customer service to patients or EBR-EMS employee.
s. Not having a process or a procedure in place for emergencies including not having enough employees available due to illness.
t. EBR-EMS did not know what employees were assigned to their account because of the lack of information on the software they are forced to use that wasn't adequate for their system.
u. Unable to give EBR-EMS reports on deficiencies regarding EBR-EMS employees documentation due to numerous errors created by Defendant.
v. Reports not being provided by Defendant as stated in the RFP unless asked for a rather than frequently sent as agreed to.
w. EBR-EMS did not receive daily emails regarding the ACR corrections needed. Instead EBR-EMS employees had to login daily to EMSight to determine if corrections were needed.
x. The appropriate reimbursements were not paid to EBR-EMS, due to the inability of the defendant to abide by the contract.[4]

---

[4] See November 16, 2023 correspondence from EMS, attached hereto as Exhibit "C".

10.

These performance issues were set forth in a letter from EMS to Defendant dated November 16, 2023.[5]

11.

Defendant acknowledged the performance issues and acknowledged an inability to cure the issues set forth in the November 16, 2023, letter and specifically stated in a letter dated December 6, 2003, and signed by George Abatjoglou, President of defendant, that defendant acknowledged that " …unfortunately, with the constraints of the systems and processes EMSMC utilizes in our billing operation, we will be unable to cure the list of items that you have provided in the corrective action …. EMSMC agrees to accept a 30 day termination notice and conduct a 90 day wind down period through March 31, 2024."[6]

12.

On April 18, 2024, City/Parish terminated its contract with Defendant, and per the Contract, requested that its patient data be returned as it is the property of City/Parish.[7]

13.

The Contract also states that "[a]ll accounts are to remain with [City/Parish's Emergency Medical Services] Department. In the event of termination of the contract for any reason, all accounts shall be returned to the City-Parish upon request in a format requested by the City-Parish."

---

[5] Exhibit C.
[6] Exhibit D.
[7] Exhibit E.

14.

As per the Contract, City/Parish informed Defendant that it required its patient data be returned in order to verify the accuracy of the invoices from Defendant; however, Defendant refused to abide the Contract and refused to return the data until Defendant's invoices were paid.

15.

According to the Contract, Defendant would submit invoices to City/Parish every month along with documentation to ensure the accounts were accurate. Once the City/Parish received the invoice and the appropriate documentation and was able to confirm the accuracy of what was charged on the invoice, the City/Parish would then pay Defendant the amount on the invoice.

Instead of abiding by the Contract following termination, Defendant withheld City/Parish's patient data files and demanded that City/Parish pay the Defendant's invoices before it would release City/Parish's patient data.

16.

The City/Parish, in order to have its patient data released by Defendant, was left with no other choice and acquiesced to the demands of Defendant and paid the invoiced amounts without verifying that they are correct and despite this demand being a violation of the contract.

17.

The City/Parish also informed Defendant that based on the information provided to City/Parish by Defendant that there is a credit balance of FORTY THOUSAND NINE HUNDRED THIRTEEN AND 42/100 DOLLARS ($40,913.42) due to City/Parish.

18.

Under the terms of the contract, an overpayment would be subtracted from the next month's invoice, however, the contract was terminated; therefore, the credit balance should be refunded to City/Parish.

19.

As a result of the breaches of contract by Defendant set forth herein, the City/Parish was required to enter into two (2) separate contracts with a third-party auditor and to purchase a software depository.

20.

The third-party auditor determined that Defendant had a 90% audit rate which is significantly lower than the industry standard of 98%.

21.

The third-party auditor significantly reduced the Accounts Receivables.

## CAUSES OF ACTION

22.

The Defendant breached the contract set forth herein.

23.

The City/Parish continues to suffer injury from Defendants' breach of contract.

24.

Defendant had a duty of good faith imposed as a party to the contract and their obligations thereunder. Defendant's conduct constitutes bad faith.

25.

Defendant knew or should have known it would be unable to comply with the terms of the request for proposal and ultimate contract and/or misrepresented its capability to comply with the request for proposal and ultimate contract, but entered into the contract anyway. The actions of defendant constitute fraud.

## DAMAGES

26.

Due to the breach of contract by Defendant and acknowledged by Defendant, the City-Parish incurred loss of revenue, loss of reimbursements and damages, all of which the City/Parish is entitled to recover from Defendant.

27.

Due to the breach of the contract, the City/Parish was required to purchase a software depository. Defendant is responsible for these costs incurred by the City/Parish.

28.

As a result of the breaches of contract by Defendant set forth herein, the City/Parish was required to enter into two (2) separate contracts with a third-party auditor. Defendant is responsible for these costs incurred by the City/Parish.

29.

Due to the breach of contract and the Improper billing of Medicare and Medicaid claims, the City/Parish was not reimbursed by Medicare and Medicaid the funds that should have been recovered. The City Parish is entitled to recover these losses from Defendant.

30.

Upper Payment Limit (UPL) is the maximum amount that can be paid by Medicare and Medicaid to an entity like EMS for medical services provided. The UPL rate recovered by EMS is dependent upon the rate of collections; the higher the rate of collections, the higher the UPL rate and the higher the reimbursement amount. Due to the breach of contract, the collections rate for EMS was lower than it should have been and, as a result, the UPL rate was lower and reimbursements to EMS were lower. The City/Parish lost revenue as a result and the City Parish is entitled to recover these losses from Defendant.

31.

Due to the breach of contract by the Defendant and due to Defendant's failure to timely file claims, certain claims were lost and as a result the City/Parish lost significant reimbursements and revenue, all of which the City/Parish is entitled to recover from Defendants.

32.

Due to the Defendant's breach of contract and failure to follow up on claims, the City/Parish lost significant reimbursements, all of which the City/Parish is entitled to recover from Defendant.

33.

The City/Parish is due the credit balance of $40,913.42 that was owed the City/Parish at the time of termination of the contract.

## JURY TRIAL DEMAND

34.

The City of Baton Rouge/Parish of East Baton Rouge requests a trial by jury.

## PRAYER FOR RELIEF

35.

**WHEREFORE**, Plaintiff, the **CITY OF BATON ROUGE/PARISH OF EAST BATON ROUGE,** prays for judgment in its favor and against Defendant, **EMERGENCY MEDICAL SERVICES MANAGEMENT AND CONSULTANTS** for all amounts due, plus attorney fees, judicial interest, all costs of these proceedings, and for all other general and equitable relief as this Court deems proper.

**RESPECTFULLY SUBMITTED:**

**A. GREGORY ROME**
**PARISH ATTORNEY**

BY: /s/ Creighton B. Abadie
**CREIGHTON B. ABADIE, (#24271)**
**Assistant Parish Attorney**
222 St. Louis Street, 9th Floor
Baton Rouge, Louisiana 70802
Telephone: (225) 389-3114
Facsimile: (225) 389-8736
E-mail: cabadie@brla.gov